UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIRECT CONSTRUCTION SERVICES, LLC,      Case No.
a Michigan non-profit corporation,      Hon.
and TIMOTHY DRAKEFORD,

           Plaintiffs,

v.

CITY OF DETROIT, MAYOR MICHAEL EDWARD
DUGGAN, DETROIT LAND BANK AUTHORITY,
DETROIT BUILDING AUTHORITY, TAMMY DANIELS
(in her official capacity), IRENE TUCKER, (in her official capacity),
BOYSIE JACKSON (in his official capacity),
RON CRAWFORD (in his official capacity),
TIMOTHY M. PALAZZOLO (in his official capacity),
and BRIAN FARKAS (in his official capacity), Jointly and Severally.

           Defendants,

---

Vanessa G. Fluker (P64870)
**VANESSA G. FLUKER, ESQ., PLLC**
Attorney for Plaintiffs
2727 Second Ave, Suite 111
Detroit, Michigan 48201
(313) 393-6005
Fax: (313) 393-6007
Email: vgflawyer@sbcglobal.net

---

## COMPLAINT AND JURY DEMAND

Plaintiffs DIRECT CONSTRUCTION SERVICES, LLC and TIMOTHY

DRAKEFORD, by and through their attorneys, VANESSA G. FLUKER, ESQ.,

PLLC, and for their Complaint against Defendants CITY OF DETROIT, MAYOR MIKE DUGGAN, DETROIT LAND BANK AUTHORITY, DETROIT BUILDING AUTHORITY, TAMMY DANIELS, IRENE TUCKER, BOYSIE JACKSON, RON CRAWFORD, TIMOTHY M. PALAZZOLO and BRIAN FARKAS, states as follows:

## PARTIES

1.      Plaintiff Direct Construction Services, LLC, ("DCS"), a domestic limited liability company with registered office located at 5741 Roosevelt St., Detroit, MI 48208, and it principal place of business in Detroit, MI.

2.      Plaintiff Timothy Drakeford is a natural person, and the managing member of Direct Construction Services, LLC, with its principal place of business located in the City of Detroit, County of Wayne, and State of Michigan, and doing business in the City of Detroit, County of Wayne, State of Michigan.

3.      Defendant City of Detroit is a municipality in Wayne County, State of Michigan, with the City Clerk as its proper agent under MCR 2.105.

4.      Defendant Mayor Mike Duggan is the mayor of the City of Detroit, with the City of Detroit Law Department as his proper agent under MCR 2.105.

5.      Defendant Detroit Land Bank Authority ("DLBA"), is quasi-municipal corporation pursuant to MCR 2.105, and it proper agent for service of process is the City of Detroit Law Department.

6.      Defendant Detroit Building Authority ("DBA") is a quasi-municipal corporation pursuant to MCR 2.105, and it proper agent for service of process is the City of Detroit Law Department.

7.      Defendant Tammy Daniels in her official capacity as the Executive Director of the Detroit Land Bank Authority.

8.      Defendant Irene Tucker, in her official capacity as the Chief Financial Officer of the Detroit Land Bank Authority.

9.      Defendant Boysie Jackson in his official capacity as the Purchasing Director for the City of Detroit.

10.     Defendant Ron Crawford, in his official capacity as the Compliance Officer for the City of Detroit.

11.     Defendant Brian Farkas in his official capacity as Demolition Special Projects Direct for the Detroit Building Authority.

12.     Defendant Timothy M. Palazzolo in his official capacity as Demolition Operations Manager for the City of Detroit.

## JURISDICTION AND VENUE

13.     This cause of action also arises under Civil Rights Acts of 1866 & 1870, 42 U.S.C. §§ 1981 & 1983 (Sections 1981 & 1983), including Section 1981(b), which prohibit discrimination and adverse treatment on the basis of race

with respect to the formation of contracts and the implementation of government contracts and retaliation.

14.     This cause of action also arises under the fair housing and financing provisions of the Michigan Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2501 et seq. (ELCRA), which, like Sections 1981 & 1983, prohibits any and all forms of discrimination on grounds of race or color in connection with government contracts and retaliation.

15.     This cause of action includes claims for breach of contract and concert of action by Defendants.

16.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 3613 and 15 U.S.C. § 1691e.  The Court also has supplemental jurisdiction over Plaintiffs' state law ELCRA claims, breach of contract and concert of action claims.

17.     Plaintiffs' claims are timely, as the three-year statute of limitations period applicable to claims under Sections 1981 & 1982 and the ELCRA, six year statute of limitations for breach of contract and a three year statute of limitations for concert of action.

18.     Venue is appropriate, under 28 U.S.C. § 1391, since the events giving rise to this action occurred in this District; and the events occurred in the governmental municipality of Defendants.

# GENERAL ALLEGATIONS

## Hardest Hit Funds Requirements the Demolition Program

19.     The Home Affordable Modification Program (HAMP) created a component entitled the Hardest Hit Funds, for states that had exceptionally high mortgage foreclosures, and Michigan was one of the identified states.   The program initially covered assistance to individual homeowners with mortgage delinquency issues.  The program was further expanded to include tax foreclosures.  (**Exhibit 1,** Hardest Hit Homeowners Informational Sheet)

20.     The Hardest Hit Program has further expanded permitting local municipalities to designate funding for demolition or residential housing that posed a safety and/or health risk, as many homes remained vacant post foreclosure. These homes created not only blight but safety concerns for the communities impacted.

21.     The City of Detroit was awarded Hardest Hit Funds that was implemented through the Detroit Land Bank Authority, with Michigan State Housing Authority acting as the federal fiduciary.  Moreover, the Detroit Building Authority acted as the management agent for the City of Detroit to coordinate and implement the Demolition Program.   (**Exhibit 2**, Demolition Management Agreement Between City of Detroit and Detroit Building Authority)

22.      As a part of the demolition program, minority contractors were solicited and encouraged to bid on demolition contract packages, under the Hardest Hit Homeowners funding.  There was a positive response and many minority contractors in the metro Detroit area viewed this as a positive opportunity to enhance their business and perform viable work for the Detroit Land Bank Authority and improving the quality of life for the citizens of the City of Detroit.

23.      The contracts were bided upon by minority contractors including the Plaintiffs in the instant matter with the understanding the contracts would be implemented and executed in a fair and non discriminatory manner, as all governmental contracts are required to be performed.  Unfortunately, this was not the case as reflected in the numerous news articles as well as personal experiences of many minority contractors.

24.      It came to light there were issues with the amount of money being charged for demolition of property under the Detroit Land Bank Authority's demolition program funded with federal Hardest Hit Homeowners dollars. Moreover, some contractors including the Plaintiffs were asked to change bidding and cost numbers after the initial invoicing to reflect compliance under the Hardest Hit Homeowners guidelines.

25.      Plaintiffs by and through Plaintiff Timothy Drakeford refused to make the changes in the numbers.  This issue was high profile and media outlets

and journalists were writing on the subject.  Plaintiff Timothy Drakeford was interviewed by a local newspaper as to his position with changing the numbers post the bidding and invoicing.  Plaintiff Drakeford commented he would not change numbers or engage in any conduct that would be inappropriate or reflect his company in a negative light.  (**Exhibit 3,** Detroit News Article dated November 3, 2016)

26.     This case arises because of Defendants' breach of contract, concert of action, due process violations, discrimination on the grounds of race in its implementation of the Hardest Hit Homeowners Demolition program, including failure to timely pay black contractor in comparison to their white counterparts, improper and disparate discipline, and retaliation.

## DIRECT CONSTRUCTION SERVICES, LLC'S BACKGROUND

27.     Plaintiff hereby incorporates by reference Paragraphs 1 through 26, as though fully restated herein.

28.     Plaintiff DCS emerged as a new company after the death of the patriarch of Drakeford and Sons Trucking.  Plaintiff Timothy Drakeford took the helm, armed with a Master Degree in civil engineering.  Plaintiffs' are licensed residential builders in the State of Michigan.  (**Exhibit 4**, Residential Builder's License)  Plaintiff Drakeford has participated in construction management training.  Moreover, Plaintiff Drakford has made special training for lead and asbestos in

construction.  (**Exhibit 5**, Turner Management Training Certificate, and **Exhibit 6,** Training Certificate for Lead and Asbestos)

29.     Plaintiff Drakeford is further certified in concrete, has highway construction certification, and evacuation training. (**Exhibit 7**, Concrete Training Certificate, **Exhibit 8**, Certificate for Evacuation Training, and **Exhibit 9**, Highway Construction Certificate)   Plaintiff Drakeford received special U.S. Congressional Recognition for his company, DCS, just this year on March 27, 2018.  (**Exhibit 10,** U.S. Congressional Certificate of Special Recognition)

**Plaintiff Timothy Drakeford is a Member of a Protected Class and Minority Business Owner.**

30.     Plaintiff Timothy Drakeford is Black or of African-American descent.

31.     Plaintiff Drakeford's race or color as "Black or African American" was known to Defendants through the contract bidding process.

32.     Plaintiff DCS is a minority owned and operated company located in Detroit, Michigan.

33.     Defendants at all relevant times was aware of Plaintiff Drakeford being a black individual and Plaintiff DCS being a minority owned and operated business.

**Plaintiffs' DLBA Contracts, Work Performance and Discriminatory Treatment As Compared To White Contractors.**

34.     Plaintiffs bidded and was awarded three (3) contracts for demolition work by the DLBA, including contract 11, 4.7.16A, and 4.7.16B.  (**Exhibit 11**, DLBA Contracts with Plaintiffs)

35.     Plaintiffs did notice that its payments were delayed and much more difficult to obtain from the DLBA, than larger white companies, such as Adamo and Homrich.  Moreover, Plaintiff was commonplace with minority contractors were force to work outside the scope of the contract including cleaning trash from demolished properties that had been finished months before and previous cleaned and cleared.  During this process, Plaintiffs were not being paid.

36.     The unfair treatment became very noticeable, and an investigation into the hefty payments to white companies began.  After it was learned the may have been over pricing, Defendant DBLA and DBA representatives wanted contractors to adjust their numbers to fit within the designated cost cap.

37.     Plaintiff DCS had been performing on the two contracts it had been awarded for a total of 48 homes.  Plaintiff DCS received a letter dated December 19, 2016 from DLBA for an immediate Stop Work Order.  (**Exhibit 12**, Stop Work dated December 19, 2016)  There was no explanation as to why the stop work order was issued.  Just the stop work order of all work until further notice.  Interestingly, Plaintiff DCS received a Policy on Contractor Discipline dated three

(3) days after the stop work order. (**Exhibit 13,** Policy on Contractor Discipline dated December 22, 2016)

38.    Plaintiff by and through its representative Tim Drakeford received a letter dated February 17, 2017, regarding the OIG report. (**Exhibit 14**, DLBA Modified Stop Work Letter February 17, 2017)  It specifically delineated that the five (5) properties in question would not be reimbursed.  Moreover, it directed Plaintiff to correct any sidewalk work that needed to be done.

39.    Plaintiff DCS began making calls regarding restarting work on the contracts. Instead of receiving information of restarting work, the representative was called to a meeting and told he was indefinitely suspended.  This was further memorialized in a letter dated May 19, 2017.  (**Exhibit 15,** DLBA Suspension Letter dated May 19, 2017)

40.    Plaintiff at that point was concerned and had been question by FBI investigators regarding issues at the DLBA.  Plaintiff was advised he and his company could not bid or continue work. Plaintiff DCS was placed on the DLBA contractor suspension list as indefinitely suspended.  (**Exhibit 16**, Contractor Suspension List)

41.    Plaintiff took bid packages to the DLBA and dropped them off. Interestingly, Plaintiff's suspension status was immediately changed and DCS

removes from the suspension list until after the bidding session for contracts was over.  (**Exhibit 17**, Contractor Suspension List)

42.	During this time, Plaintiff continues to seek payment for work previously completed.  Some work was at that time over six months old. (**Exhibit 18,** September 16, 2016, Email chain)  Plaintiff working with his bondholders as DLBA's failure to pay Plaintiff caused several vendors to call in Plaintiff's bond, still could not get DLBA representatives to timely pay on completed work. (**Exhibit 19**, June 6, 2017, email chain)

43.	Defendant DLBA by and through Tammy Daniels, Irene Tucker, Boysie Jackson, Ron Crawford, Timothy M. Palazzolo and Brian Farkas acted in concert to allege and create a bogus picture fraud by Plaintiff Drakeford.  This was so outrageous, as the very conduct Plaintiff Drakford was accused of doing was the policy of the DLBA and DBA, and a DLBA employee actually emailed Plaintiff Drakeford and advised if he had problems cropping the photos of the site she would assist. (**Exhibit 20**, Email dated May 17, 2017)

44.	This outrageous conduct was catalyzed by a bogus and perpetual OIG performed its alleged investigation and a report was generated on February 1, 2017, alleging photos from five (5) properties were altered or "photo shopped". Plaintiff by and through its representative Timothy Drakeford fully cooperated

with the investigation was surprised as to the findings and the proposed recommendations. (**Exhibit 21,** OIG Report dated February 1, 2017)

45.     Plaintiff Drakeford continued to try to get compensated under his contracts for work already performed.  The acknowledgement of completed work by DLBA employees would turn into no payment for Plaintiffs.  (**Exhibit 22,** June 14, 2017, Email Chain)   In fact, Defendant Irene Tucker assured immediate payment for Plaintiff's work.  (**Exhibit 23,** August 1, 2017, email from Irene Tucker)

46.     The constant battle with DLBA personnel to get some type of payment became the quest not only for Plaintiff Drakeford, but for his bondholders who consistently kept inquiring as to why Plaintiff is not being paid when work was completed and invoice submitted.  This repetitive process has gone on for over a year now, with no success on the DLBA and DBA honoring Plaintiffs contract and making payment as reflected in the numerous emails between Plaintiff his bondholder and DLBA personnel including Defendant Tammy Daniels.  (**Exhibit 24**, September 26, 2017, Email Chain, **Exhibit 25**, November 13, 2017, Email Chain, **Exhibit 26,** December 11, 2017, Email chain, and **Exhibit 27**, March 5, 2018, email chain)

47.     Defendants DLBA, City of Detroit and DBA require contractors to sign a Non-Collusion Affidavit, yet go to great lengths to collude and retaliate

against contractors such as Plaintiffs.  (**Exhibit 28**, Non Collusion Affidavit) Defendant's suspended Plaintiffs not because of work quality but because of the refusal to change numbers in bid packages.  Moreover, Defendants Ron Crawford, Tim  Palazzolo and Tammy Daniels all acting as state actors suspended Plaintiff without due process and created a disciplinary policy and applied it retroactively or ex post facto.

## DAMAGES

48.      As a direct and proximate result of the Defendants' differential treatment and discrimination against Plaintiff Drakeford on grounds of his race or color, or the race or color. Plaintiff Drakeford has incurred economic losses and damages, including the loss of income, and equipment, as well as non-economic injuries, such as embarrassment, humiliation, anxiety, frustration, loss of personhood and civil rights, and other personal injuries caused by the discriminatory actions of Defendants DLBA, DBA and City of Detroit by and through it employees and agents.

49.      Further, the acts, conduct and/or omissions of Defendants with respect to Plaintiff Drakeford was and continues to be intentional, malicious, and in wanton or reckless disregard of the rights and feelings of Plaintiff Drakeford, entitling Plaintiff Drakeford to an additional award of punitive and/or exemplary damages.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1981 – RACE OR COLOR

50.     Plaintiff hereby incorporates by reference Paragraphs 1 through 49, along with all exhibits, as though fully restated herein.

51.     Defendants' discriminatory actions on grounds of race or color denied Plaintiffs the rights to which they entitled to contract for and otherwise enjoy the privileges of just as is enjoyed by white citizens.

52.     Defendants' discrimination in violation of section 1981 has caused injuries and damages to Plaintiffs.

53.     Plaintiffs have done work above and beyond the contract but cannot get paid on its contracts as its white counter parts similarly situated who have not had to wait 12-24 months for payment of work performed under a governmental contract,

54.     Defendants acting under color of State law has impaired Plaintiffs' ability to perform and enjoy the benefits of its contracts.

## COUNT II
## VIOLATION OF 42 U.S.C. § 1983 - DUE PROCESS

55.     Plaintiff hereby incorporates by reference Paragraphs 1 through 54, along with all exhibits, as though fully restated herein.

56.     Defendants' actions are in violation of 42 U.S.C. §§ 1983, including due process violations.

57.      Defendants Ron Crawford, Tim Palazzolo and Tammy Daniels violated Plaintiffs due process rights by suspending Plaintiff for violating a policy that had not been created.  Moreover, Defendants failed to apprise Plaintiffs of any appeal process, and Plaintiff has to seek legal counsel to even attempt to obtain exercise an appeal right despite this being a constitutional right.  (*See* **Exhibits 12-13**)

58.      Defendants Ron Crawford, Tim Palazzolo and Tammy Daniels did deprive Plaintiff Drakford of due process by improperly suspending Plaintiff Drakeford, and even more outrageous, create a disciplinary policy after the discipline, and in violation of location ordnances and City of Detroit Charter.

## COUNT III
## RETALIATION

59.      Plaintiff hereby incorporates by reference Paragraphs 1 through 59, along with all exhibits, as though fully restated herein.

60.      Defendants retaliated against Plaintiff because Plaintiff refused to change numbers in a bid package. Defendant Brian Farkas open and publicly stated that Plaintiffs would never work for the DBLA or DBA again and within 60 days, Plaintiffs' were suspended and under a stop work under, although white counterparts were not suspended or subjected to retaliation.

61.     Plaintiff was singled out with retaliate after refusing to change numbers and for cooperating with the FBI during their investigation in the Detroit area after Plaintiff Timothy Drakeford.

62.     Plaintiffs have been damaged as a result of Defendants retaliation and is entitled to actual damages as well as non-economic injuries and damages.

## COUNT IV
## VIOLATION OF THE ELCRA

63.     Plaintiff hereby incorporates by reference Paragraphs 1 through 63, along with all exhibits, as though fully restated herein.

64.     Defendants have discriminated against Plaintiffs on grounds of race or color in violation of the ELCRA, which prohibits any person or entity from discriminating against any person in making in making and performing a contract or enforcing  the terms or conditions of such a contract or transaction, because of race or color.

65.     Defendants have refused to adhere to the terms and conditions of Plaintiffs contract, and have altered terms making Plaintiff do excessive work outside the contract, which is not required of white contractors.

66.     Defendants' discrimination in violation of the ELCRA has caused injuries and damages to Plaintiffs.

## COUNT V
## BREACH OF CONTRACT

67.   Plaintiff hereby incorporates by reference Paragraphs 1 through 66, along with all exhibits, as though fully restated herein.

68.     The elements of a valid and enforceable contract are (1) parties competent to contract; (2) offer and acceptance; (3) consideration; and (4) mutuality of obligation.

69.     Plaintiff and DLBA are parties competent to contract.

70.     There was an offer and acceptance based on a bidding process for three (3) contract for demolition work.  (*See* **Exhibit 11**)  Plaintiffs accepted executed the agreement, and performed under it.

71.     Defendant DLBA by through its employees and agents including but not limited to all Defendants in their official capacity did breach the agreement by failing to perform or otherwise impair the terms of the contract.

72.     As a result of Defendants' breach of contract, Plaintiff have suffered economic loss as well as liquidated damages and opportunity losses.

## COUNT IV
## CONCERT OF ACTION: ALL DEFENDANTS

73.   Plaintiff hereby incorporates by reference Paragraphs 1 through 73, along with all exhibits, as though fully restated herein.

74.     Defendants DLBA, DBA and City of Detroit by and through their employees and representatives, including but not limited to Tammy Daniels, Irene Tucker, Boysie Jackson, Ron Crawford, Timothy M. Palazzolo and Brian Farkas acted in concert to allege and create a bogus picture fraud by Plaintiff Drakeford.

75.     These Defendants acted in concert pursuant to a common design or plan to remove Plaintiffs from the DLBA demolition program, and to retaliate against Plaintiff Drakeford for refusing to change numbers and for cooperating in an FBI investigation into the demolition program.

76.     Defendants including but limited to Tammy Daniels, Irene Tucker, Boysie Jackson, Ron Crawford, Timothy M. Palazzolo and Brian Farkas acted in concert to allege and create a bogus disciplinary action and made material misrepresentations regarding discipline, and the performance of the terms of Plaintiffs contract.

77.     Defendants including Defendants Tammy Daniels, Irene Tucker, Boysie Jackson, Ron Crawford, Timothy M. Palazzolo and Brian Farkas made the representations with the intent that the Plaintiffs would rely on them so the Defendants could breach the Plaintiffs contract and retaliate against Plaintiffs.

78.     Defendants knew their representations were false or reckless without knowledge of their truth.

79.     Plaintiff did rely on Defendants Tammy Daniels, Irene Tucker, Boysie Jackson, Ron Crawford, Timothy M. Palazzolo and Brian Farkas.

80.     More importantly, Plaintiffs believed Defendants Tammy Daniels, Irene Tucker, Boysie Jackson, Ron Crawford, Timothy M. Palazzolo and Brian Farkas would be complying with the federal and state law with respect to federal contract awards.

81.     Plaintiffs relied on Defendants' representations to their detriment.

82.     As a direct and proximate result of Defendants material misrepresentations, while acting in concert, Plaintiffs have suffered damages including loss of income, credit and reputation destroyed, actual damages and pain and suffering.

WHEREFORE, for all of the above reasons, Plaintiffs respectfully requests that the Court grant the following relief against all Defendants:

(A)     Enter a declaratory judgment that the actions of Defendants are discriminatory and illegal;

(B)     Preliminarily and permanently enjoin Defendants and its agents, affiliates, employees and successors, and all other persons in active concert or participation with Defendants, from further discrimination in any aspect of demolition contract awards;

(C)     Award actual, compensatory and/or statutory damages to compensate Plaintiffs for their economic losses and damages, and non-economic injuries, such as emotional distress, loss of civil rights, and humiliation and embarrassment caused by the Defendants' discrimination, in an amount to be proven at trial;

(D)    Grant Plaintiffs an award of punitive and/or exemplary damages as a result of Defendants deliberate, intentional, overt, willful and flagrant discrimination on grounds of race or color, in an amount that reflects the dual purposes of punishment and deterrence;

(E)    Declare Defendants DLBA in breach of the subject contracts as identified in Exhibit 11, of this complaint;

(F)    Declare Defendants acted in concert of action to the detriment of the Plaintiffs;

(G)    Grant Plaintiffs an award of attorney fees, costs and pre-judgment and post-judgment interest incurred in bringing this action; and

(H)    Grant such other and additional relief that the Court finds just and appropriate under the circumstances.

Respectfully submitted,

**VANESSA G. FLUKER, ESQ., PLLC**

By:    /s/ Vanessa G. Fluker
        Vanessa G. Fluker (P64870)
        Attorney for Plaintiffs
        2727 Second Ave., Suite 111
        Detroit, Michigan 48201
        (313) 393-6005
        vgflawyer@sbcglobal.net

Dated:  July 27, 2018

## JURY DEMAND

Plaintiffs DIRECT CONSTRUCTION SERVICES, LLC and TIMOTHY DRAKEFORD, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**VANESSA G. FLUKER, ESQ., PLLC**

By:  Vanessa G. Fluker
Vanessa G. Fluker (P64870)
Attorney for Plaintiffs
2727 Second Ave., Suite 111
Detroit, Michigan 48207
(313) 393-6005
Dated:  July 27, 2018            vgflawyer@sbcglobal.net