**EXHIBIT 2**

# DEMOLITION MANAGEMENT AGREEMENT BY AND BETWEEN THE
# CITY OF DETROIT BUILDING AUTHORITY
# AND
# THE CITY OF DETROIT

This Demolition Management Agreement (this "Agreement") is executed this 11 day of AUGUST, 2015 by and between THE CITY OF DETROIT, a Michigan municipal corporation, acting by and through its Department of Housing and Revitalization ("DHR") and its Buildings, Safety, Engineering and Environmental Department ("BSEED") (collectively, the "City" or a "Party") and the DETROIT BUILDING AUTHORITY, a Michigan public body corporate, whose address is 1301 Third Street, Suite 328, Detroit, Michigan 48226 (the "DBA" or a "Party," and together with the City the "Parties"), and this Agreement shall become effective upon the date of its filing with the Michigan Secretary of State.

## WITNESETH:

WHEREAS, pursuant to the Property Management Agreement between the City and the DBA, dated October 31, 2014, the City has requested that the DBA enter into an agreement with its DHR and BSEED for the demolition of certain residential and commercial improvements situated on property in the City; and

WHEREAS, the Agreement sets forth the terms pursuant to which the Parties will cooperate to implement the City's Demolition Program (as defined below); and

WHEREAS, the City has determined that implementation of the demolition of blighted residential and commercial structures under the Demolition Program will serve to secure and stabilize areas devastated by property abandonment, prevent further deterioration and decline in property values and enhance the quality of life in the City; and

WHEREAS, the City desires to engage the professional services of the DBA to *coordinate and implement the Demolition Program* in accordance with the terms of this Agreement; and

WHEREAS, the DBA agrees to coordinate and implement the Demolition Program in accordance with the terms of this Agreement; and

WHEREAS, the City represents and warrants that it has secured or will secure funds necessary to pay the cost of the DBA's duties (as described below in Paragraph 4).

WHEREAS, the Parties intend to transfer functions and responsibilities under authority of and in compliance with Act 8 of the Michigan Public Acts of 1967, being MCLA 124.531 et seq. ("Act 8").

1974111 1910/502227 DET

1

NOW, THEREFORE, in consideration of the mutual undertakings herein set forth, it is agreed between the Parties as follows:

1. Incorporation of Recitals. The foregoing recitals are incorporated herein as terms of this Agreement, as though fully restated in this Paragraph 1.

2. Definitions. The following terms shall have the following meanings:

   A. Annual Demolition Plan or "Plan" shall mean the Plan developed by the Parties at the beginning of each year of the term of this Agreement, which Plan shall include a budget identifying funds to be used to pay the costs in connection with the Plan for the implementation of the Demolition Program.

   B. Contractor(s) shall mean professionals, including demolition contractors, surveyors and environmental consultants, as shall be necessary to complete demolition activities approved as part of the Annual Demolition Plan.

   C. Demolition Program shall mean the City's plan for the demolition of blighted and dangerous residential and commercial improvements located in the City.

   D. Program Manager shall mean the DBA, which shall manage the performance of Contractor who are engaged to implement the Annual Demolition Plan under the Demolition Program.

3. Annual Demolition Plan. The Parties shall work cooperatively with each other to develop at the beginning of each year of the term of this Agreement an Annual Demolition Plan for the implementation of the Demolition Program.

4. The City Duties. The City shall perform the following duties and services in furtherance of the implementation of the Demolition Program:

   A. *The City shall engage in a timely fashion such Contractors, as shall be necessary to complete demolition activities approved as part of the Annual Demolition Plan.*

   B. *The City shall require in its contracts with Contractors that all such Contractors comply with the City of Detroit Demolition Policies and Procedures,* as they may be revised, copies of which are attached hereto as Exhibit A.

   C. *All costs and expenses of the Contractors shall be paid by the BSEED and DHR* as applicable when such costs and expenses

become due, and the DBA shall have no obligation to pay such costs.

D. *The City shall enter into one or more written contracts for the demolition components of the Project.* Any contract or subcontract executed by City or its Contractors in connection with an Annual Demolition Plan under the Demolition Program shall contain, at a minimum, the following:

    (i) Indemnification, waiver, hold harmless and release provisions in favor of the DBA and the City; and

    (ii) Insurance requirements of the Contractors, and their respective subcontractors substantially similar to the requirements set forth in Subparagraph E below, which requirements shall include a requirement that the City and the DBA be named as an additional insured on all required policies; and

    (iii) An acknowledgement by the Parties to the contract that the DBA is a third party beneficiary of the indemnification and insurance obligations described in such contract.

E. The City's Contractors and subcontractors shall procure and maintain at their sole expense for the entire term of their respective agreements the following insurances:

(i) Workers' Compensation insurance, which meets the Michigan statutory requirements, and Employers' Liability insurance with minimum limits of $500,000 for each accident, each disease, and each employee. DBA agrees that it will obtain a similar covenant with respect to Workers' Compensation insurance from any consultant or subcontractor retained by DBA to render any of the services in connection with the Project.

(ii) Comprehensive General Liability insurance which conforms to the following requirements: the minimum policy limits shall be $2,000,000 each occurrence for bodily injury and $2,000,000 each occurrence for property damage, with a $5,000,000 umbrella including XCU and Products Completed Operations.

(iii) Automobile Liability insurance covering all owned, non-owned, or hired automobiles with minimum limits for bodily injury of $2,000,000 each person and $5,000,000 each accident and property damage of $5,000,000 each accident. Such

insurance shall comply with the provisions of the Michigan No Fault Insurance Law.

(iv) Pollution Liability Insurance which conforms to the following requirements: the minimum policy limits shall be $5,000,000 each occurrence and in the aggregate.

    a. If, during the term of this Agreement, changed conditions or other pertinent factors should, in the reasonable judgment of the DBA or the City, render inadequate the insurance limit, or types of coverage required herein, the City shall cause its Contractors and subcontractors to furnish on demand such additional coverage as may reasonably be required under the circumstances. All such insurance shall be under valid and enforceable policies, issued by insurers of recognized responsibility, registered to do business in the State of Michigan and which are well-rated by national rating organizations and are acceptable to the DBA.

    b. If commercially reasonable, the policies shall contain an agreement by the insurer that such policies shall not be canceled or materially changed without at least thirty (30) days prior notice to the DBA. Certificates of insurance and endorsements evidencing such coverage shall be submitted to the DBA prior to the commencement of any work by the Contractor or subcontractor and prior to the expiration dates of expiring policies.

    c. The City's Contractors and subcontractors, as applicable, shall be responsible for payments of all deductibles contained in any insurance required hereunder.

    d. Except for Workers' Compensation Insurance, insurance policies shall name the" City" and "the DBA" as an additional insured, and shall state that the City's Contractors' and subcontractors' insurance is primary, with respect to the City and the DBA as an additional insured, and is not in excess over any insurance already carried by the DBA and the City.

5. <u>The DHR Duties</u>. DHR shall perform the following duties and services in furtherance of the implementation of the Demolition Program.

    A. Ensure that the Community Development Block Grant ("CDBG") funds used in demolishing a property are used for a CDBG eligible use, meet applicable definitions, and serve a national objective under the CDBG regulations, the City's Demolition Policies and Procedures, and associated eligibility checklists and document the determinations.

    B. Prepare and perform all environmental requirements under 24 CFR Part 58

and environmental standards at 24 CFR Part 570.604; convey all necessary documentation for the release and certification of federal funds to the Detroit Field Office of the U.S. Department of Housing and Urban Development; and monitor the City's compliance with environmental review requirements.

C. Schedule and perform all necessary environmental testing and abatement in accordance with federal rules and regulations.

D. If blighted properties are occupied, determine whether federal relocation requirements are applicable.

E. Working in conjunction with the City Purchasing Department, qualify and procure the services of demolition contractors, professionals, and other vendors through an approved procurement process that complies with the requirements of 24 CFR Part 85.36.

F. Provide BSEED and the DBA with reporting formats, checklists and other forms for federal compliance and reporting obligations and ensure the recording of liens.

G. Update DBA and BSEED on any HUD requirements associated with the use of funds that arise in the course of implementing the CDBG demolition activities.

H. Monitor the progress of project implementation and expenditure of funds.

I. Carry out periodic monitoring and evaluation activities, as determined necessary by DHR or HUD. Such evaluations will be based on the terms of this Agreement, comparisons of planned versus actual progress relating to project scheduling, budgets, audit reports and output measures.

J. Pay the DBA a fee of Two Hundred Fifty and 00/100 ($250.00) Dollars as an activity delivery fee for each residential structure that is demolished under the Demolition Program pursuant to this Agreement for the complete and proper performance of services. Pay the DBA a fee of Two Thousand Five Hundred and 00/100 ($2,500.00) Dollars for each commercial structure that is demolished under the Demolition Program pursuant to this Agreement for the complete and proper performance of services. Commercial structures shall include storefronts and buildings that have a minimum of four (4) or more residential units.

K. Following approved procedures, submit payment documentation to BSEED requesting the use of fire escrow funds.

L. BSEED shall be paid subject to its agreement with HRD for the cost of its services, which is incorporated in full by reference.

6. The BSEED Duties. The BSEED shall perform the following duties and services in furtherance of the implementation of the Demolition Program.

    B.    This Agreement shall become effective upon the date following the date on which it is filed with the Michigan Secretary of State. Filing this Agreement with the Michigan Secretary of State is the responsibility of the DBA, and the DBA shall notify the Director of HRD when the Agreement has been filed.

    C.    The term of this Agreement shall be as stated in Section 10 hereof.

    D.    The employees of the Parties will not be transferred, reassigned or otherwise affected as a result of the performance of the Agreement. The DBA will manage the demolition of improvements by the Contractors, but no real property, facilities, equipment or other personal property will be transferred, sold or otherwise disposed of between the Parties.

    E.    All of the costs of the DBA's performance of its obligations under this Agreement shall be paid by the City in accordance with Paragraph 4 hereof.

9.    Equal Opportunity and Fair Employment Practices.

    A.    The Parties agree that in connection with this Agreement they shall comply with the United States Constitution and all federal, state, and local laws, rules, and regulations governing fair employment practices and equal employment opportunity. The Parties shall promptly furnish any information requested by the City or its Human Rights Department with respect to this subsection A.

    B.    Where required by law, the City shall comply with, and shall cause all of its Contractors to comply with, the goals established by the City's Executive Orders No. 2007-1 and 2003-4, as may be amended or replaced; Ordinance No. 31-99, as amended, concerning the purchase of goods and supplies and currently codified as Detroit City Code §§18-5-1 through 18-5-22 and §§18-5-31 through 18-5-36; and Ordinance No. 20-93, as amended, concerning the requirement that prevailing wage and fringe benefit rates be paid on City projects and currently codified as Detroit City Code §§18-5-60 through 18-5-66.

10.   Term. Unless otherwise terminated in accordance with the terms hereof, this Agreement shall remain in effect for two (2) years from the date this Agreement is filed with the Michigan Secretary of State's office; provided, however, that if neither Party provides a Notice of Termination to the other Party, the Agreement shall be automatically extended without further action by the Parties for an additional two (2) year term. Notwithstanding anything to the contrary in this Agreement, (i) the Parties by joint action may terminate this Agreement with or without cause, in whole or in part, after giving written notice of termination (a "Notice of Termination") to the other Party at least thirty (30) days before the effective date of the termination (the "Termination Date"), or (ii) in the alternative, either Party may terminate this Agreement without joint action and with or without

cause, in whole or in part, after giving a Notice of Termination to the other Party at least one (1) year before the Termination Date.

- A. In the event the City and/or the DBA terminates this Agreement, in whole or in part, by issuing a Notice of Termination, specifying the Termination Date in accordance herewith, the City shall be obligated to pay the DBA as follows:

    i. All costs, expenses and obligations incurred by the DBA and committed under this Agreement to the Termination Date.

    ii. All non-disputed amounts, if any, due on account of any requests of the City that have not been paid to the DBA at the time of the Termination Date.

- B. Upon receipt or issuance of a Notice of Termination, the Parties shall:

    i. Stop work under this Agreement on the date of the Notice of Termination and to the extent specified in the Notice of Termination;

    ii. Not obligate any funds for costs beyond the Termination Date in the Notice of Termination and place no further orders or contracts for materials, services or facilities, except as may be necessary for completion of such portion of the work under this Agreement as is not terminated;

    iii. Terminate any orders and contracts to the extent that they relate to the portion of the work so terminated;

    iv. Preserve all records and submit to the requesting Party any records and reports maintained by the other Party in connection with the performance of the Agreement; and

    v. Within thirty (30) days of the Termination Date, submit to each other a final report of receipts and expenditures of funds relating to this Agreement, and a list of all creditors, subcontractors, and/or other parties with which the Parties have incurred financial obligations pursuant to this Agreement (if any).

11. <u>Annual Milestones and Performance Goals</u>. The Parties agree to the annual milestones and performance goals outlined in Exhibit B to this Agreement.

12. <u>Contact Persons</u>. Each Party agrees to designate a contact person who will be responsible for facilitating and implementing the terms and conditions of this

Agreement. The Parties agree to operate in good faith to resolve, clarify and accommodate each other with respect to any and all issues arising under this Agreement.

13. Staffing. Each Party shall assign certain of its staff to the oversight, direction, and implementation of activities, roles and responsibilities under this Agreement.

14. Records. Each Party shall maintain written records of work performed by its staff, and expenditures incurred in connection with this Agreement, which records shall be maintained for four (4) years after termination of this Agreement or for such longer period as may be required.

15. Project Area Residents and Businesses. To the greatest extent feasible, lower-income residents of the project areas shall be given opportunities for training and employment; and to the greatest extent feasible, eligible business concerns located in or owned in substantial part by persons residing in the project areas shall be awarded contracts in connection with the project. At a minimum, as applicable, DHR shall coordinate the City's compliance with the Section 3 clause of the Housing and Community Development Act of 1968, as amended. Implementation of these provisions shall be in accordance with Section 3 and the City's Demolition Policies and Procedures.

   In the procurement of supplies, equipment, construction, or services to implement this Agreement, DHR shall coordinate compliance with the requirements of Section 3 and make positive efforts to utilize small and minority/women-owned business enterprises as sources of supplies and services, and provide these enterprises the maximum feasible opportunity to compete for contracts to be performed pursuant to this Agreement. To the maximum extent feasible, these small and minority/women-owned business enterprises shall be located in or owned by residents of the project areas designated by the City of Detroit. DHR will track compliance with Section 3 and W/MBE.

16. Uniform Administrative Requirements. The Parties agree to comply with the applicable uniform administrative requirements as described in Federal Community Development Block Grant Regulations 24 CFR 570.502 and 24 CFR Part 85.

17. Environmental Responsibilities. The Parties shall carry out the activities in this Agreement in compliance with all federal laws and regulations at Subpart K of 24 CFR Part 570, except that: (i) BSEED and DBA do not assume DHR's

environmental responsibilities described at §570.60 or any other environmental responsibilities; and BSEED and the DBA do not assume DHR's responsibility for initiating the review process under 24 CFR part 52.

18. Notices. All notices, consents, approvals, requests, reports, and other communications (herein collectively called "Notices") required or permitted under this Agreement shall be in writing and sent by registered or certified mail or nationally recognized overnight courier service, postage prepaid and addressed as follows:

> If to the City:
>
> Buildings, Safety Engineering and Environmental Department
> Coleman A. Young Municipal Center
> 2 Woodward Avenue, Suite 401
> Detroit, Michigan 48226
> Attention: Eric Jones, Director
>
> Department of Housing and Revitalization
> 65 Cadillac Square, 19th Floor
> Detroit, Michigan 48226
> Attention: Arthur Jemison, Director
>
> If to the DBA:
>
> City of Detroit Building Authority
> 1301 Third Street, Suite 328
> Detroit, Michigan 48226
> Attention: David Manardo, Director
>
> With a copy to:
>
> Lewis & Munday, P.C.
> 2490 First National Building
> 660 Woodward Avenue
> Detroit, Michigan 48226
> Attention: Reuben A. Munday

Notices shall be deemed received three (3) days after the day of mailing if delivered by registered or certified mail, or one (1) business day after deposit with a nationally recognized overnight courier service. Either Party to this Agreement may change its address for the receipt of Notices at any time by giving Notice thereof to the other as herein provided. Any Notice given by a Party hereunder must be signed by an authorized representative of such Party.

19. <u>Miscellaneous</u>.

   A. The relationship of the DBA and the City shall be that of a professional contractor and, except as provided herein, no liability or benefits, such as retirement benefits or liabilities, pension rights or liabilities, holiday pay, sick pay, vacation pay, personal injury or property insurance rights or liabilities, or such other rights, provisions or liabilities arising out of a contract of hire or employer/employee relationship either express or implied shall arise or accrue to either Party as a result of this Agreement and undertaking.

   B. This Agreement, and the performance by the Parties hereto of their respective obligations hereunder, is subject to all applicable state and federal laws. This Agreement is governed by the laws of the state of Michigan.

   C. This Agreement may be amended from time to time by the execution by both Parties of a written amendment.

   D. Each Party to this Agreement hereby represents and warrants to the other Party that it has full right, power and authority to enter into and perform this Agreement; that its execution and delivery of this Agreement have been duly authorized by all necessary action; and that this Agreement constitutes its valid, binding and enforceable obligations.

   E. If any provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of the Agreement, or the application of such provisions to persons or circumstances other than those as to which it is invalid or unenforceable shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

   F. Subject to the provisions stated in paragraph 5 L, this instrument, including all Exhibits hereto, contains the entire agreement between the Parties, and all prior negotiations and agreements are merged herein. Neither Party nor any agents of either Party have made any representations except as expressly set forth herein, and no rights or remedies are or shall be acquired by either Party by implication or otherwise unless expressly set forth herein.

   G. This Agreement may be executed in any number of counterparts, and all of the counterparts taken together shall be deemed to constitute one and the same instrument.

[Signatures Follow]

1974111.1910/502227.DET

IN WITNESS WHEREOF, the parties hereto have entered into this Demolition Management Agreement as of the date written above.

**CITY OF DETROIT BUILDING AUTHORITY,**
a Michigan public body corporate

By: _/s/ Isaiah McKinnon_
Isaiah McKinnon

Its: Chairman

By: _/s/ Christopher T. Jackson_
Christopher T. Jackson

Its: Treasurer

**CITY OF DETROIT**, a Michigan municipal corporation

By: _/s/_

Its: Department of Housing and Revitalization Director

By: _/s/ Eric Jones_

Its: Department of Buildings, Safety Engineering and Environmental Director

Approved as to form:
General Counsel to the DBA

By: _/s/ Lewis & Munday, P.C._
Lewis & Munday, P.C.

This Agreement was approved by the DBA Board of Commissioners:

On: FEBRUARY 19,
Date: 2015

APPROVED AS TO FORM:

_/s/_
Corporation Counsel for
the City of Detroit

1974111.1910/502227.DET

13

PURCHASING DEPARTMENT OF
THE CITY OF DETROIT

Purchasing Director
_____
[signature: Boysie Jackson]